UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| TRAVIS EMORY CORRELL, | 4:14-CV-04168-LLP |
| Petitioner, | |
| vs. | REPORT AND RECOMMENDATION |
| THE UNITED STATES OF AMERICA, ERIC HOLDER, ATTORNEY GENERAL; CHARLES E. SAMUELSJR., DIRECTOR, FEDERAL BUREAU OF PRISONS; PAUL M. LAIRD, REGIONAL DIRECTOR, FEDERAL BUREAU OF PRISONS; AND W. SCOTT WILLIS, WARDEN, FEDERAL PRISON CAMP YANKTON; | |
| Respondents. | |

**INTRODUCTION**

Petitioner, Travis Emory Correll, ("Correll") an inmate who is incarcerated at the Yankton Federal Prison Camp in Yankton, South Dakota, has filed a civil rights lawsuit pursuant to 42 U.S.C. § 1983 with a supporting brief and exhibits (Docket 1). He has paid the filing fee in its entirety.

The Court has, as it must, "screened" this case pursuant to 28 U.S.C. § 1915, and has determined it must be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

The Court has taken judicial notice of the file in Correll's underlying criminal conviction from the United States District Court, Northern District of Georgia, United States v. Correll,  1:07 CR-365.   See, Hood v. United States, 152 F.2d 431 (8th Cir. 1946) (federal district court may take judicial notice of proceedings from another federal district court); Matter of  Phillips, 593 F.2d 356 (8th Cir. 1979) (proper for federal court to take judicial notice of state court pleadings); Green v. White, 616 F.2d 1054 (8th Cir. 1980) (court of appeals may take judicial notice of district court filings).

## JURISDICTION

The pending matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Judge Schreier's  Order dated October 16, 2014.

## FACTUAL[1] AND PROCEDURAL HISTORY

Correll was charged by an information on October 31, 2007 with wire fraud in violation of 18 U.S.C. § 1343 and 2.  The information charged that Correll operated an investment program ("Horizon") which was nothing more than a ponzi scheme.  Correll solicited in excess of one hundred million dollars from individual investors, inducing them to invest their money with promises of high monthly returns.  Correll further represented to investors that their principal investments would be used solely for the purpose of funding a foreign bank investment program.  In reality, Correll never invested any money with a

---

[1]The factual history is gleaned from the pleadings contained in the underlying criminal file, Correll's § 1983 Complaint, and its attachments.   See, United States v. Correll 1:07 CR-365 (United States District Court, Northern District of Georgia) and Docket 1 in this case.

foreign bank investment program, but instead used investors' money to pay his own salary and expenses, and to pay promised monthly returns to earlier investors.

Correll entered into a plea agreement, and a judgment of conviction was entered on March 24, 2008.  Correll was sentenced to incarceration for a term of 144 months, restitution in the amount of $29,164,934.98, and supervised release for a period of three years.  Correll did not file a direct appeal.  On June 9, 2009, pursuant to the government's Rule 35 motion, the Honorable Orinda D. Evans, United States District Judge for the Northern District of Georgia, entered an Order reducing Correll's sentence to 108 months.

On October 20, 2014, Correll filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983.  He simultaneously filed an identical writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the District of South Dakota, Southern Division.  See, Correll v. United States of America, Eric Holder, et. al. Civ. No. 14-4158, United States District Court, District of South Dakota, Southern Division.   In both actions, Correll claims the Respondents are violating the Equal Protection Clause by enforcing 18 U.S.C. § 3621(e)(2)(B), which gives federal inmates who have a history of substance abuse the opportunity to qualify for early release by undergoing treatment but does not afford the same opportunity to federal inmates who do not have a history of substance abuse.

In his suit papers, Correll explains he is a non-violent offender who has no history of substance abuse.  Docket 1, p. 1.  He has participated in

3

extensive reentry educational programming and as a result, has earned a college degree.  Docket 1, ¶ 17.  See also, Docket 1-2, p. 2-3 (copy of Correll's Bachelor of Arts degree and transcripts from Mount Marty College).  He further explains that non-violent inmates who properly demonstrate a history of substance abuse pursuant to 18 U.S.C. § 3621(e)(2)(B) are eligible to participate in reentry programming via the Residential Drug Abuse Program "(RDAP") and as such, may ultimately  qualify for the extra incentive of early release.  Docket 1, ¶¶ 14-15.  Correll, on the other hand, although he has invested a comparable amount of time into reentry programming through his college course work will not be offered early release because his reentry programming, unlike RDAP, does not offer the extra incentive of early release. Docket 1, ¶¶ 14-17.

Correll asks the court to award him "a one year reduction in his statutory sentence for his successful completion of reentry programming, just like the one year reduction in sentence that is awarded to those who complete 500 hours of reentry programming through the RDAP."  Docket 1, ¶ 18.

### DISCUSSION

**A.  Screening Standards for Prisoner Complaints Pursuant to 28 U.S.C. §§ 1915, 1915A and FED. R. CIV. P. 12(b)(6)**

Pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)  and 1915A(b)(1), a prisoner's complaint should be dismissed on screening if it "fails to state a claim upon which relief may be granted."  This standard is the same standard as is used to determine whether a complaint satisfies the standards of FED. R. CIV. P. 12(b)(6).  Kane v. Lancaster County Dept. of Corrections, 960 F.Supp. 219 (D.

4

Neb. 1997).  A prisoner complaint is screened for dismissal under 28 U.S.C. § 1915  "accepting as true all of the factual allegations contained in the complaint and affording the plaintiff all reasonable inferences that can be drawn from those allegations."  Jackson v. Nixon, 747 F.3d 537, 540-41 (8th Cir. 2014).  Further, "a *pro se* complaint, however inartfully pleaded, [is held] to less stringent standards than formal pleadings drafted by lawyers."  Jackson, 747 F.3d at 541. (citation omitted).

The United States Supreme Court addressed the standard district courts are to apply to FED. R. CIV. P. 12(b)(6) motions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  The law predating Twombly and Iqbal held that under FED R. CIV. P.  12(b)(6), the court should not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  However, Conley's "no set of facts" language was overruled in Twombly.  Twombly, 550 U.S. at 563.  Instead, the Court adopted a standard by which plaintiffs must plead "enough facts to state a claim to relief that is *plausible* on its face."  Id. at 570 (emphasis added).

The Court stated that FED. R. CIV. P. 8(a)(2) requires only that a plaintiff plead "a short and plain statement of the claim showing that the pleader is entitled to relief."  Id. at 554-55 (citing FED. R. CIV. P. 8(a)(2)).  The Court acknowledged that a complaint does not need "detailed factual allegations" to survive a motion to dismiss, but emphasized a plaintiff's obligation to provide

5

more than a mere recital of the elements of his cause of action.  Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  The Court imposed a "plausibility standard" and held that a claim "requires a complaint with enough factual matter (taken as true)" to support the conclusion that the plaintiff has a valid claim.  Id. at 556.

The Court stated that conclusory allegations were not enough to survive a 12(b)(6) motion to dismiss a claim.  Id. at 556-57.  "The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) [a valid claim] reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.' " Id. at 557 (quoting FED. R. CIV. P. 8(a)(2)).  The Court said the plaintiff's complaint must contain sufficiently specific factual allegations in order to cross the line between "possibility" and "plausibility" of entitlement to relief.  Id.

In 2009, the Supreme Court decided Ashcroft v. Iqbal, and affirmatively applied  the Twombly Rule 12(b)(6) standard to all civil actions.  Iqbal, 556 U.S. at 684.  Because Twombly interpreted and applied FED. R. CIV. P. 8,  and because the Federal Rules of Civil Procedure apply to all civil actions in federal court, the Iqbal Court said, Twombly was properly applied to all federal civil cases.  Id.(citing FED. R. CIV. P. 1).

The Iqbal Court expressly adopted Twombly's announcement that Rule 8 does not require "detailed factual allegations," but does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

The Court reaffirmed Twombly's holding that a complaint containing mere "labels and conclusions" or a "formulaic recitation of a cause of action" is insufficient to survive a motion to dismiss under Rule 12(b)(6). Id.

The Iqbal Court stated the plausibility standard requires that the plaintiff allege more than a "sheer possibility" that the defendant committed the alleged unlawful conduct, but does not impose a "probability requirement" at the pleading stage. Id. (quoting Twombly, 550 U.S. at 556). The plaintiff must, however, allege sufficient facts to "raise a reasonable expectation that discovery will reveal evidence of [the conduct complained of]." Twombly, 550 U.S. at 556. Where a plaintiff pleads facts that are merely consistent with a defendant's liability, he has not "nudged [his] claim across the line from conceivable to plausible," and the complaint must be dismissed. Iqbal, 556 U.S. at 680 (citing Twombly, 550 U.S. at 570). There is no heightened requirement of fact pleading of specifics––only a requirement that the plaintiff plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

The Court identified two "working principles" from Twombly. Iqbal, 556 U.S. at 678. First, courts are not required to accept as true legal conclusions "couched as factual allegation[s]" contained in a complaint. Id. (citing Papasan, 478 U.S. at 286). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555). Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, in applying the plausibility standard, the Court stated that it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (quoting decision below Iqbal v. Hasty, 490 F.3d 143, 157-158 (2d Cir. 2007)).  Where the plaintiff's allegations are merely conclusory, the court may not infer more than the mere possibility of misconduct, and the complaint has *alleged*–but has not "show[n]"–that he is entitled to relief as required by Rule 8(a)(2).  Iqbal, 556 U.S. at 679.

A reviewing court should begin by identifying statements in the complaint that are conclusory and therefore not entitled to the presumption of truth.  Id. at 679-680.  Legal conclusions must be supported by factual allegations demonstrating the grounds for a plaintiff's entitlement to relief.  Id. at 679; Twombly, 550 U.S. at 555; FED. R. CIV. P. 8(a)(2).  A court should assume the truth only of "well-pleaded factual allegations," and then may proceed to determine whether the allegations "plausibly give rise to an entitlement to relief."  Iqbal, 556 U.S. at 679.  It is with these standards in mind that Correll's Complaint is carefully considered.

## B.    Overview of the RDAP

The Residential Drug Abuse Program ("RDAP") was created by the Bureau of Prisons ("BOP") pursuant to Congressional mandate in the Violent Crime Control Law Enforcement Act ("VCCLEA") of 1994.  Congress directed the BOP to "make available appropriate substance abuse treatment for each prisoner the [BOP] determines has a treatable condition of substance addiction

8

or abuse." 18 U.S.C. § 3621(b).  Associated regulations require the inmate to

complete and pass a drug abuse education course.   28 C.F.R. § 550.51.

The BOP must provide residential substance abuse treatment for all

eligible prisoners, subject to available funding.  18 U.S.C. § 3621(e)(1).  A

prisoner is "eligible" for RDAP if he is "determined by the [BOP] to have a

substance abuse problem," and he is "willing to participate in a residential

treatment program."  18 U.S.C. § 3621(e)(5)(B)(i) and (ii).  The BOP may, as an

incentive for successful completion of RDAP, reduce the inmate's sentence by

up to one year.  18 U.S.C. § 3621(e)(2).

> Drug treatment studies for in prison populations find that when
> programs are well-designed, carefully implemented, and utilize
> effective practices they:
>
> - Reduce relapse
> - Reduce criminality
> - Reduce recidivism
> - Reduce inmate misconduct
> - Increase the level of the offender's stake in societal norms
> - Increase the levels of education and employment upon
>   return to the community
> - Improve health and mental health symptoms and conditions
> - Improve relationships

See, www.bop.gov/inmates/custody_and_care/substance_abuse_treatment.jsp

The BOP's 2014 Program Directory indicates that for up to three years post

release, male participants in RDAP are 16 percent less likely to recidivate and

15 percent less likely to relapse than similarly situated inmates who do not

participate. [2]

_____

[2] www.bop.gov/inmates/custody_and_care/docs/BOPNationalProgramCatalog.pdf

9

**C.     No Constitutional Right To Early Release**

It is well established that a convicted person has no general
constitutional right to be released before the expiration of his prison term.
Greenholtz v. Inmates of Neb. Penal and Correctional Complex, 442 U.S. 1, 7
(1979).  Inmates likewise have no constitutional entitlement to participate in
federal rehabilitative programs.  Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976).
It is just as well established that even inmates who are unquestionably
qualified to and do participate in RDAP do not have a constitutional right to the
early release benefit.  Lopez v. Davis, 531 U.S. 230, 241 (2001); Gianni v. BOP,
405 Fed. Appx. 96, 97 (8th Cir. 2010).  It follows then that Correll, who is not
eligible to participate in RDAP, likewise has no constitutional right to early
release—through the RDAP program or otherwise.

**D.     Fundamentals of an Equal Protection Claim**

"The Equal Protection Clause generally requires the government to treat
similarly situated people alike."  Klinger v. Department of Corrections, 31 F.3d
727, 731 (8th Cir. 1994)(citing City of Cleburne v. Cleburne Living Ctr., Inc.,
473 U.S. 432, 439 (1985)).  "Dissimilar treatment of dissimilarly situated
persons does not violate equal protection."  Klinger, 31 F.3d at 731 (citation
omitted).  The first step in an equal protection case is determining whether the
plaintiff has demonstrated different treatment than others similarly situated to
him.  Absent a threshold showing that he is similarly situated to those who
allegedly received more favorable treatment, the plaintiff does not have a viable
equal protection claim.  Id.

10

If an equal protection claim is not based on a "suspect class" or a

fundamental right, it is subject to a rational basis review.  Gilmore v. County of

Douglas, State of Nebraska, 406 F.3d 935, 937 (8th Cir. 2005) (citations

omitted).  The rational basis review is "the paradigm of judicial restraint.

Congress does not violate the right to equal protection merely because the

classifications made by its laws are imperfect, or because in practice a

classification results in some inequality."  Minnesota Senior Federation,

Metropolitan Region v. United States, 273 F.3d 805, 808 (8th Cir. 2001)

(citations omitted, punctuation altered).

The United States Supreme Court has explained that the rational basis

review in an equal protection analysis

> . . . is not a license for courts to judge the wisdom, fairness or
> logic of legislative choices.  Nor does it authorize the judiciary to sit
> as a superlegislature to judge the wisdom or desirability of
> legislative policy determinations made in areas that neither affect
> fundamental rights nor proceed along suspect lines.  For these
> reasons, a classification neither involving fundamental rights nor
> proceeding along suspect lines is accorded a strong presumption of
> validity.  Such a classification cannot run afoul of the Equal
> Protection Clause if there is a rational relationship between the
> disparity of treatment and some legitimate governmental purpose.
> Further, a legislature that creates these categories need not
> actually articulate at any time the purpose or rationale supporting
> its classification.  Instead, a classification must be upheld against
> an equal protection challenge if there is any reasonably conceivable
> state of facts that could provide a rational basis for the
> classification.
>
> A state, moreover, has no obligation to produce evidence to sustain
> the rationality of a statutory classification.  A legislative choice is
> not subject to courtroom factfinding and may be based on a
> rational speculation unsupported by evidence or empirical data.  A
> statute is presumed constitutional, and the burden is on the one
> attacking the legislative arrangement to negative every conceivable

11

> basis which might support it, whether or not the basis has a
> foundation in the record.  Finally, courts are compelled under
> rational basis review to accept a legislature's generalizations even
> when there is an imperfect fit between means and ends.  A
> classification does not fail rational basis review because it is not
> made with mathematical nicety or because in practice it results in
> some inequality . . .

Heller v. Doe, 509 U.S. 312, 319-320 (1993) (citations omitted, punctuation

altered).

Finally, "[n]either prisoners nor indigents constitute a suspect class . . ."

Murray v. Dosal, 150 F.3d 814, 818 (8th Cir. 1998).  And "[t]he United States

Supreme Court has defined fundamental rights as those rights that are 'deeply

rooted in this nation's history and tradition.' "  Johnson v. University of Iowa,

431 F.3d 325, 331 (8th Cir. 2005) (citing Moore v. City of East Cleveland, 431

U.S. 494, 503 (1977)).  It is with these general principles in mind that the

sufficiency of the equal protection claims in Correll's complaint have been

reviewed.

**E.     Correll Is Not Similarly Situated to Inmates With Substance Abuse
         Problems and Has Otherwise Failed to Sufficiently State an Equal
         Protection Claim**

         **1.      Correll is Not Similarly Situated to RDAP-Eligible Inmates**

"Absent a threshold showing that [he] is similarly situated to those who

allegedly receive favorable treatment, the plaintiff does not have a viable equal

protection claim. . .  The similarly situated inquiry focuses on whether the

plaintiff [is] similarly situated to another group for purposes of the challenged

government action."  Klinger, 31 F.3d at 731 (citation omitted).  Correll asserts

he is similarly situated to the federal inmates who have verified substance

abuse problems and are allowed to participate in RDAP because both he and

they are "non-violent" offenders.  Specifically, Correll asserts § 3621(e)(2)(b)

"grants the Director of the Federal Bureau of Prisons (BOP)  both an

extraordinary and a discretionary power:  the Director is authorized to reduce

the statutory sentence of any nonviolent inmate, by up to one year, if that

inmate successfully completes 500 hours of reentry programming via the BOP's

Residential Drug Abuse Program (RDAP)." See Docket 1 at p.2.  Correll paints

the group with which he believes he is similarly situated with too broad a

brush.

　　　　First, while it is true that 18 U.S.C. § 3621(e)(2)(B) grants the director the

authority to reduce an inmate's sentence, it does not grant the director the

authority to reduce the sentence of any nonviolent inmate.  Rather, the inmate

must first successfully complete the RDAP program.  An inmate cannot

complete the program unless he first qualifies to participate in RDAP.  In order

to qualify for participation in RDAP, the inmate must produce satisfactory

documentation of a substance abuse problem.  See 28 C.F.R. § 550.53(b)(1)

(explaining a "verifiable substance abuse disorder" is a requirement for

enrollment in RDAP).  The term "verifiable substance abuse disorder" is not

defined by statute or regulation, but the Bureau of Prisons has defined it in its

Program Statement 5330.11 § 2.5.8(d)(2) in relevant part as follows:

- 　　Documentation to support a substance abuse disorder within the 12-month period before the inmate's arrest on his or her current offense.

13

- Documentation from a probation officer, parole officer, social service professional, etc., who has information that verifies the inmate's problem with substance(s) within the 12-month period before the inmate's arrest on his or her current offense.
- Documentation from a substance abuse treatment provider or medical provider who diagnosed and treated the inmate for a substance abuse disorder within the 12-month period before the inmate's arrest on his or her current offense.
- Multiple convictions (two or more) for Driving under the Influence (DUI) or Driving while Intoxicated (DWI) in the 5 years prior to his or her most recent arrest.

The BOP's implementation of the program statement to condition eligibility upon documented proof of a verifiable substance abuse disorder within the twelve-month period before arrest on the current offense has been repeatedly held to be a permissible construction of the enabling statute. See e.g., Standifer v. Ledezma, 653 F.3d 1276, 1280 (10th Cir. 2011); Mora-Meraz v .Thomas, 601 F.3d 933, 942-43 (9th Cir. 2010); Laws v. Barron, 348 F. Supp. 2d 795, 805-806 (E.D. Ky. 2004); Warman v. Philips, 2009 WL 2705833 at * 12, n.7 (N.D. W.Va. 2009) (collecting cases).   Because he was never eligible for RDAP in the first place, Correll is not similarly situated to those inmates for whose benefit RDAP was created.  Klinger, 31 F.3d at 731 ("The similarly situated inquiry focuses on whether the plaintiff [is] similarly situated to another group for purposes of the challenged government action.").

Correll is not the first federal prisoner to make an equal protection challenge to RDAP because he did not qualify for the program or its one year sentence reduction incentive.   "For purposes of equal protection analysis, Petitioner is similarly situated to other non-drug using inmates, not, as he

14

appears to suggest, the inmate population as a whole. . . . Petitioner is not being treated differently from other non-drug using inmates, who are, like him, ineligible for the sentence reduction pursuant to RDAP." Phillips v. United States, 2010 WL 3910059 at *3 (S.D. Tex. Sept. 8, 2010) (citations omitted). See also, Workman v. Gutierrez, 2007 WL 3088086 (N.D. W.Va., Oct. 22, 2007) at *6 (inmate's equal protection claim rejected because he "failed to show that any other inmate lacking adequate documentation of substance abuse has been admitted to the program and granted a one-year sentence reduction . . ."); Sowell v. Chandler, 2014 WL 1794854 at *4 (N.D. Tex. May 6, 2014) (same).

Because he is not similarly situated to the inmates for whom Congress created the RDAP program, Correll has not made the threshold showing required for a viable equal protection claim. Klinger, 31 F.3d at 731. Even if the equal protection analysis were to proceed, however, Correll would not prevail.

## 2.    RDAP Survives Rational Basis Review

As explained above, inmates are not a suspect class, and have no constitutional or fundamental right to early release. Murray, 150 F.3d at 818; Greenholtz, 442 U.S. at 7.  Even if Correll could show he was similarly situated, therefore, his equal protection claim would be subject to a rational basis review. Gilmore, 406 F.3d at 937.

In his brief, Correll asserts the RDAP's early release incentive for inmates who complete substance abuse programming but not for inmates who complete other types of programming is not rational.  In support of this argument,

15

Correll explains other types of pre-release programming (such as his college courses) result in much lower recidivism rates than the RDAP program.  See Correll's brief, Docket 1 at p.14 (explaining inmates who earn their bachelor's degrees while in prison have a recidivism rate of 5.6 percent, while inmates who complete RDAP have a recidivism rate of 44.3 percent.)  See also, John H. Esperian, The Effect of Prison Education Programs on Recidivism, 61(4) THE JOURNAL OF CORRECTIONAL EDUCATION, December 2010, at 324; Docket 1-5 at p. 10 (effect of earning a college degree while incarcerated on recidivism) and Triad Drug Treatment Evaluation Project Final Report of Three Year Outcomes: Part I:  Executive Summary, p.3 (Docket 1-6 at p. 11).  (explaining inmates who complete RDAP have a 44.3 percent rate of recidivism).

Correll states "[s]imply put, § 3621(e)(2)(B)'s classification scheme should not survive the plaintiff's equal protection challenge because its functionality does not have a rational connection to the  government's stated objective: lowering rates of recidivism."  Docket 1 at p. 14.  Again, however, Correll paints with too broad a brush.  Congress' purpose when it created RDAP was not to reduce recidivism in general, but to reduce recidivism *among inmates with substance abuse problems* by providing them with substance abuse treatment. See, H.R. Rep. No. 103-320, at 3-4. (1993). The House of Representatives Report explained that "substance abuse treatment for prison inmates is a powerful tool for reducing recidivism."  *Id.* at p. 3.  It further found that "[t]he link between substance abuse and crime is well established. Drug addiction can increase an offender's rate of predatory criminal activity by 800 percent. . .

16

Substance abuse also is a major cause of the tremendous growth in the Federal prison population over the past decade, and far too few Federal inmates are receiving treatment for substance abuse.  Offenders with substance abuse problems also have an extraordinarily high rate of recidivism.  It is the Committee's belief that releasing an inmate into the community without treating his or her substance abuse problem while an inmate is in custody is to virtually guarantee future crime . . ." Id. at p. 3-4.  The stated goal of RDAP, then, was to reduce what Congress recognized was an "extraordinarily high" rate of recidivism among substance abusers.  According to the documentation provided by Correll, RDAP has accomplished that goal.  See, Triad Drug Treatment Evaluation Project Final Report of Three Year Outcomes: Part I: Executive Summary, p.3 (Docket 1-6, p.11). (52.5 percent who did not complete RDAP were re-arrested within three years, while 44.3 percent who did complete RDAP were re-arrested within three years).

Congress recognized that substance abusers have an "extraordinarily high" rate of recidivism.  H.R. Rep. No. 103-320, at 4. (1993). RDAP reduces that rate from 52.5 percent to 44.3 percent.  Triad Drug Treatment Evaluation Project Final Report of Three Year Outcomes: Part I: Executive Summary, p.3 (Docket 1-6, p.11).  That RDAP does not reduce the rate of recidivism among substance abusers to the same rate of recidivism achieved by inmates who earn a bachelor's degree while incarcerated, however, does not render RDAP irrational.  "A classification does not fail rational basis review because it is not made with mathematical nicety or because in practice it results in some

17

inequality . . ." Heller, 509 U.S. at 319-320. (citations omitted, punctuation altered).  For all of these reasons, Cordell's equal protection challenge to RDAP fails.

**F.    Review of Correll's Claim is Precluded by 18 U.S.C. § 3625**

In Reeb v. Thomas, 636 F.3d 1224 (9th Cir. 2011) the Ninth Circuit explained the judicial review provisions of the Administrative Procedure Act

> do not apply to any determination, decision, or order made pursuant to 18 U.S.C. §§3621-3624.  The BOP has authority to manage inmate drug treatment programs, including RDAP, by virtue of 18 U.S.C. §3621. To find that prisoners can bring habeas petitions under 28 U.S.C. § 2241 to challenge the BOP's discretionary determinations made pursuant to 18 U.S.C. § 3621 would be inconsistent with the language of 18 U.S.C. § 3625.[3]

Reeb, 636 F.3d at 1227.  Federal courts, therefore, lack jurisdiction to review the BOP's individualized RDAP determinations made pursuant to 18 U.S.C. § 3621.  Id. at 1228.  Review is available only if the BOP action is contrary to established federal law, violates the Constitution, or exceeds statutory authority.  Id.  Accord, Gatewood v. T.C. Outlaw, 560 F.3d 843, 846-47, n. 2 (8th Cir. 2009) ("§ 3625 may well preclude judicial review of BOP decisions applying the final rule and program statement to particular inmates."); Martin v. Gerlinski, 133 F.3d 1076, 1079 (8th Cir. 1998) ("Accordingly it is apparent that § 3625 precludes judicial review of agency adjudicative decisions but not of rulemaking decisions."); LeMaster v. Hollingsworth, 2011 WL 3322227 at *6

---

[3]18 U.S.C. § 3625 explains that the provisions of the Administrative Procedure Act (sections 554, 555 and 701-706) "do not apply" to any determination, decision or order under 18 U.S.C. §§ 3621-3625.

(D.S.D.) (If there are no legal errors in BOP decision making process that would justify habeas relief, the Court cannot second guess the ultimate decision made by the BOP).

Correll does not (and cannot) contend the BOP exceeded statutory authority of RDAP when it excluded him from RDAP eligibility, because he admits he does not have a substance abuse problem.  Rather, Correll asserts RDAP itself violates the Equal Protection clause of Constitution.  Because the court has already determined Correll's equal protection claim cannot survive, however, his claim is unreviewable by this court pursuant to 18 U.S.C. § 3625.

**G.    The Filing Fee**

If Correll's suit had been allowed to proceed and he prevailed on the merits, he would have recovered the filing fee.  Both the legislative history and the case law interpreting the Prison Litigation Reform Act, however, instruct that unsuccessful prison litigants, like any other litigants, do not get their filing fees back if their cases are dismissed.  That Correll's case is dismissed pursuant to the screening procedures of § 1915 does not negate his obligation to pay the fee.  In Re: Prison Litigation Reform Act, 105 F.3d 1131, 1134 (6th Cir. 1997).

The obligation to pay a filing fee accrues the moment a plaintiff files his complaint with the court, and it cannot be avoided merely because the case is eventually dismissed for failure to state a claim upon which relief may be granted.  Anderson v. Sundquist, 1 F.Supp.2d 828, 830 n. 5 (W.D. Tenn. 1998). One of the purposes of the Prison Litigation Reform Act is to require the

19

prisoners to pay a very small share of the large burden they place on the
Federal judicial system by paying a small filing fee upon commencement of
lawsuits.  In doing so, the provision will deter frivolous inmate lawsuits.  The
modest monetary outlay will force prisoners to think twice about the case and
not just file reflexively.  Prisoners will have to make the same decision that law
abiding Americans must make:  Is the lawsuit worth the price? Roller v. Gunn,
107 F.3d 227, 231 (4th Cir. 1997) (quoting 141 Cong. Rec. at S7526 (May 25,
1995)  See also, In Re: Tyler, 110 F.3d 528, 529-30 (8th Cir. 1997) (prisoner
will be assessed full filing fee even if his case is dismissed because "the PRLA
makes prisoners responsible for their filing fees the moment the prisoner
brings a civil action or files an appeal.").

Correll's  filing fee will not be refunded. Correll is advised that the
dismissal of this lawsuit will be considered his first "strike" for purposes of the
Prison Litigation Reform Act.  28 U.S.C. § 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in
> a civil action or proceeding under this section if the prisoner has, on 3
> or more prior occasions, while incarcerated or detained in any facility,
> brought an action or appeal in a court of the United States that was
> dismissed on the grounds that it is frivolous, malicious, or fails to
> state a claim upon which relief may be granted, unless the prisoner is
> under imminent danger of serious physical injury.

**CONCLUSION and RECOMMENDATION**

For the reasons more fully explained above, it is recommended that Correll's Complaint pursuant to 42 U.S.C. § 1983 (Docket 1) be DISMISSED without prejudice for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**NOTICE TO PARTIES**

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated this 13th day of January, 2015.

BY THE COURT:

_____
Veronica L. Duffy
United States Magistrate Judge

21